```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,
                                            REPORT AND
                                            RECOMMENDATION
          - against -
                                            CR 06-578
                                            (NG)(MDG)
DEREK PANNELL, DARREN RUCKER and
FRANK MARTIN,

                    Defendants.
- - - - - - - - - - - - - - - - -X
```

GO, United States Magistrate Judge:

Defendant Derrek Pannell was indicted on three counts in connection with an armed robbery of a United States Post Office in violation of 18 U.S.C. §§ 371, 924(c) and 2114. The Honorable Nina Gershon has referred to me for report and recommendation Pannell's motion to suppress a gun found in his car at the time of his arrest. By order dated February 9, 2007, I denied Pannell's request for an evidentiary hearing regarding this motion.[1] See ct. doc. 73.

---

[1] An evidentiary hearing is not required if the defendant's moving papers do not state sufficient facts which, if proven, would require suppression of the evidence. See United States v. Purin, 486 F.2d 1363, 1367 (2d Cir. 1973); United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969); United States v. Gruttadauria, 439 F. Supp. 2d 240, 250 (E.D.N.Y. 2006). Here, defendant Pannell fails to demonstrate disputed issues of material fact as to the validity of the search. See United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). Even under Pannell's version of the facts, his arrest and the search of his car were lawful, as discussed below.

## BACKGROUND

The following facts are undisputed.

On November 15, 2005, three armed men robbed the James E. Davis United States Post Office in Brooklyn, New York (the "Post Office"). See Affidavit in Support of Arrest Warrants and Search Warrant at ¶¶ 3-4 ("Aff. in Support of Warrants") (attached to ct. doc. 70-2 as Exh. B). At the time of the robbery, Pannell was employed as a clerk at the Post Office. See id. at ¶ 8.

On July 24, 2006, the Honorable Ramon E. Reyes, Jr. signed warrants for the arrest of Pannell and search of his home based on an affidavit setting forth information supplied by a confidential informant and corroborated by a participant in the conspiracy who had been arrested. See Warrant for Arrest (ct. docs. 2, 3); Aff. in Support of Warrants at ¶¶ 9-13.

On July 26, 2006, at around 10:00 a.m., Pannell left his home and drove away in his car which was parked outside. See Affidavit of Derrek Pannell dated January 21, 2007 ("Pannell Aff.") at ¶¶ 4-5 (filed as pages 3-4 of ct. doc. 61). After Pannell had driven a few blocks, postal inspectors stopped Pannell's car in the vicinity of 146th Street and 119th Avenue in Queens, New York. See id. at ¶¶ 3, 5-6. They directed Pannell to step out of his car and arrested him pursuant to the arrest warrant. See id. at ¶ 6. After Pannell exited his car, the postal inspectors searched the car and found a 9mm handgun in the

center console between the driver's and front passenger's seats. See id.; Government's Mem. of Law at 5 (ct. doc. 70). The inspectors then transported Pannell and his car to the postal inspectors' office where an inventory search of Pannell's car was conducted. See Government's Mem. of Law at 5.

The postal inspectors had planned to first arrest co-defendant Rucker and then to arrest Pannell at his home and simultaneously execute the search warrant. See Operation Plan (attached to ct. doc. 70-2 as Exh. C). In fact, Rucker was arrested earlier that morning. See Government's Mem. of Law at 4.

In his motion to suppress the handgun found in his car, Pannell argues that the postal inspectors delayed arresting him in order to create a pretext to search his car since the search warrant they obtained included only his home. As the Government acknowledges, after the postal inspectors conducting surveillance of Pannell's home saw him leave in his car, the inspectors followed for a short distance before stopping Pannell's vehicle to arrest him. See Goverment's Mem. of Law at 5.

## DISCUSSION

"On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers."

United States v. Wyche, 307 F. Supp. 2d 453, 457 (E.D.N.Y. 2004); United States v. Gotti, 244 F. Supp. 2d 120, 124 (E.D.N.Y. 2003). It is well settled that a warrantless search is "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390 (1978). Among the principal exceptions to the warrant requirement are searches incident to arrest. See New York v. Belton, 453 U.S. 454, 462 (1981). "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," including "the contents of any containers found within the passenger compartment." See id. at 460. The search of a vehicle's interior is permitted even after the suspect has exited or been removed from the vehicle. See Thornton v. United States, 541 U.S. 615, 620-23 (2004); United States v. Wesley, 293 F.3d 541, 548-49 (D.C. Cir. 2002); United States v. Mitchell, 82 F.3d 146, 152 (7th Cir. 1996); see also Belton, 453 U.S. at 460 (search conducted after defendants were removed from car was valid). Accordingly, in determining whether the search of Pannell's car was proper, the Court must review the legality of Pannell's encounter with the police leading up to the search. See Michigan v. DeFillippo, 443 U.S. 31, 35 (1979); United States v. Robinson, 414 U.S. 218, 235 (1973).

The police are permitted to stop a vehicle based on probable cause or a reasonable suspicion of unlawful conduct. See Delaware v. Prouse, 440 U.S. 648, 659 (1979). This authority includes circumstances in which the police believe that the subject has been involved in or is wanted in connection with a completed felony. See United States v. Hensley, 469 U.S. 221, 229 (1985); United States v. Cooper, 949 F.2d 737, 744 (5th Cir. 1991). Here, it is undisputed that the arrest warrant was valid and based on probable cause and that the postal inspectors had probable cause to believe that Pannell was in the car. Therefore, the stop of Pannell's car and his arrest were proper.

The search was incident to Pannell's arrest since it is undisputed that the search was conducted contemporaneously with the arrest and despite Pannell's having already exited the vehicle. See United States v. Esquilin, 205 F.3d 1325, 2000 WL 232162, at *3 (2d Cir. Feb. 18, 2000) (search conducted after defendants had been arrested and removed from car); United States v. Cruz-Rojas, 104 F.3d 354, 1996 WL 690008, at *2 (2d Cir. Nov. 29, 1996) (same); United States v. McLaughlin, 170 F.3d 889, 893 (9th Cir. 1997); United States v. Willis, 37 F.3d 313, 318 (7th Cir. 1994). Further, it was proper for the postal inspectors to search the closed console between the passenger's and driver's seat. See Belton, 453 U.S. at 460 n.4; United States v. Gonzalez, 71 F.3d 819 (11th Cir. 1996); United States v. Milton,

52 F.3d 78, 80 (4th Cir. 1995); United States v. Woody, 55 F.3d 1257, 1269-70 (7th Cir. 1995).

Nevertheless, defendant Pannell argues that the gun should be suppressed because the postal inspectors waited to arrest him in his car as a pretext to perform a search. Pannell's argument fails, however, since the Fourth Amendment is concerned only with the objective circumstances surrounding the agents' actions, not their subjective intent. See Whren v. United States, 517 U.S. 806, 813-14 (1996) ("the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent") (emphasis in original). "Subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional." Scott v. United States, 436 U.S. 128, 138 (1978). The objective circumstance that justified Pannell's arrest was the warrant issued by Judge Reyes based on probable cause. Accordingly, because the agents stopped defendant's car pursuant to a valid arrest warrant, the arrest is permitted under the Fourth Amendment without regard to whether it was a pretext to search the car. See Whren, 517 U.S. at 813; United States v. Robinson, 414 U.S. 218, 221 & n.1 (1973) (traffic violation arrest not rendered invalid by fact that it was "a mere pretext for a narcotics search"); United States v. Dhinsa, 171 F.3d 721 (2d Cir. 1998) ("an officer's use of a traffic violation as a pretext

to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance"); United States v. Thompson, 29 F.3d 62, 65 (2d Cir. 1994) ("whether the stop was pretextual or not . . . is irrelevant to determining the arrest's validity"); United States v. Scopo, 19 F.3d 777, 782-84 (2d Cir. 1994) (arrest based on pretext to justify search for weapons is permitted under Fourth Amendment).

The government argues in the alternative that even if the gun was seized during an improper search, it should not be suppressed because it would have been inevitably discovered during an inventory search of the car. Under the inevitable discovery doctrine, "evidence that was illegally obtained will not be suppressed 'if the government can prove that the evidence would have been obtained inevitably even if there had been no statutory or constitutional violation.'" United States v. Mendez, 315 F.3d 132, 137 (2d Cir. 2002) (quoting United States v. Roberts, 852 F.2d 671, 675-76 (2d Cir. 1988)). This exception to the exclusionary rule has been applied in cases where evidence would have been discovered in the course of a valid inventory search. See id. at 137-38.

The inventory search is another well established exception to the warrant requirement. See Colorado v. Bertine, 479 U.S. 367, 371-72 (1987); Illinois v. Lafayette, 462 U.S. 640, 648 (1983); Mendez, 315 F.3d at 137; United States v. Thompson, 29

F.3d 62, 65 (2d Cir. 1994). When the police arrest a suspect driving a vehicle, they frequently impound the vehicle and perform an inventory search. See Mendez, 315 F.3d at 137; Thompson, 29 F.3d at 65. Such searches are justified under the Fourth Amendment because they "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger." Bertine, 479 U.S. at 372. Under this doctrine, "law enforcement officials may open closed containers as part of an inventory search so long as they act in good faith pursuant to 'standardized criteria . . . or established routine.'" Florida v. Wells, 495 U.S. 1, 4 (1990). "The existence of such a valid procedure may be proven by reference to either written rules and regulations or testimony regarding standard procedure." Mendez, 315 F.3d at 137; Thompson, 29 F.3d at 65.

To successfully invoke the inevitable discovery exception on the basis of inventory search procedures, the Second Circuit requires that the government prove: 1) that the police had legitimate custody of the vehicle being searched, so that an inventory search would have been justified; (2) that when the police agency conducted an inventory search, it did so pursuant to "established" or "standardized" procedures; and (3) that officers following those inventory procedures would have

inevitably discovered the challenged evidence.  <u>Mendez</u>, 315 F.3d at 138.

Here, the postal inspectors had legitimate custody of Pannell's vehicle following a valid arrest.  The government cites the United States Postal Inspection Service Manual for the proposition that the agency has an established policy requiring that a vehicle seized pursuant to an arrest "must be completely inventoried."  Government's Mem. in Opp. at 14 (citing United States Postal Inspection Service Manual § 461.42).  The government further represents that an inventory search of Pannell's car was conducted after it was towed.  Since it is undisputed that the Postal Service has a written inventory search policy and that such a search was conducted in this case in accordance with established procedure, I find that the gun would have been inevitably discovered had it not been found in the earlier search of Pannell's car incident to arrest.

## CONCLUSION

For the foregoing reasons, I recommend that this Court deny Pannell's motion to suppress.  This report and recommendation will be electronically filed and notice electronically sent to the parties on this date.  Any objections to this Report and Recommendation must be electronically filed, with a courtesy copy sent to Judge Gershon, by April 12, 2007.  Failure to file

objections within the specified time waives the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated: Brooklyn, New York
       March 26, 2007

/s/
MARILYN DOLAN GO
UNITED STATES MAGISTRATE JUDGE